IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN MUNICIPAL POWER, INC., | : | |
| | : | Civil Action 2:11-cv-131 |
| Plaintiff, | | |
| | : | Judge Michael H. Watson |
| v. | | |
| | : | Magistrate Judge Elizabeth P. Deavers |
| BECHTEL POWER CORP., | | |
| | : | |
| Defendant. | | |

## OPINION AND ORDER

On July 18, 2012, the Court held a discovery conference with the parties regarding a dispute involving certain documents that Defendant has deemed attorney-client privileged.  As discussed, Defendant Bechtel Power Corporation ("Bechtel") exercised its right under Paragraph 15 of the parties' Revised Stipulated Protective Order ("Claw-back Provision") with respect to an inadvertent disclosure of portions of an e-mail chain that it deemed privileged.  Plaintiff American Municipal Power, Inc. ("AMP") complied with all of its obligation under the Paragraph 15 Claw-back Provision by destroying its paper and electronic copies of the e-mails.  Bechtel provided AMP with redacted versions of the e-mail correspondence, excising those portions of the communications that it claims are privileged.  AMP now challenges the assertion of privilege with respect to the particular documents at issue. Consistent with the Claw-back Provision, Bechtel submitted the documents to the Court for *in camera* inspection.  The parties have also provided letter briefs conveying their respective positions regarding whether the e-mail statements are privileged.  This matter is now before the Court following its *in camera* inspection of the subject documents.  For the reasons that follow, the Court determines that the matters are protected by the attorney-client

privilege and not subject to disclosure under the crime-fraud exception.

**I.**

The e-mail correspondence at issue here involves communications between Martyn Daw, Bechtel's in-house attorney, and Bechtel management employees, Todd Whorten, Rondal Tobler, Joseph McConlogue, and Jarret Cantrell. The e-mail exchange occurred in July 2008 when the parties were negotiating the Engineering, Procurement, and Construction Agreement ("EPC Agreement"), which is the chief contract underlying this litigation. The e-mail chain begins when AMP's owner-engineer, R.W. Beck, sends as an attachment "Appendix A Response to RFP Exclusions and Clarifications" to Cantrell and Whorten. Whorten subsequently forwards the e-mail to the others, including Attorney Daw, without comment. Bechtel asserts that the ensuing e-mail exchange between Daw and the other recipients is exempt from disclosure under the doctrine of attorney-client privilege. The final e-mail on the subject that Bechtel has not redacted, comes from Cantrell to Tobler and does not include Daw as a recipient. In this final e-mail, Cantrell indicates that he agrees "holding on to" the full fee Bechtel sought "may be tough."

AMP challenges the designation of the e-mails as privileged. AMP first asserts that the e-mails are not protected by the attorney-client privilege because the communications involve business advice as opposed to legal counseling. AMP also contends that even if the communications are subject to attorney-client privilege, the e-mails must be disclosed because the crime-fraud exception applies.

**II.**

In Ohio, an attorney shall not disclose matters "concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client." Ohio Rev. Code §

2

2317.02(A)(1).[1]  Because it reduces the amount of discoverable information available to the parties in a lawsuit, the privilege must narrowly construed. *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996).  "The burden of establishing the existence of the privilege rests with the person asserting it." *In re Grand Jury Investigation No. 83–2–35*, 723 F.2d 447, 450 (6th Cir. 1983).    As the Supreme Court recognized decades ago:

> Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves the public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.  Communications between in-house counsel and an employee come within the purview of the attorney-client privilege.

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  In the corporate context, the attorney-client privilege extends to communications between attorneys and corporate employees regardless of their position within the corporation.[2]  To be covered, the communications must concern matters within the scope of the employees' corporate duties and the employees must be aware that the communication was for purposes of obtaining legal advice. *Id.* at 394.  "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him [or her] to give sound and informed advice." *Id.* at 390.

The Court of Appeals for the Sixth Circuit has held that the following criteria must be satisfied for a communication to be protected from disclosure by the attorney-client privilege:

---

[1]The law in Ohio regarding attorney-client privilege does not materially differ from federal common law. *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 173 n.3 (S.D. Ohio 1993).

[2]Communications between in-house counsel and an employee fall within the purview of the attorney-client privilege. *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St. 3d 261, 265 (Ohio 2005) (citations ommitted).

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)).

"[C]ommunications between an attorney and client of primarily a business nature are outside the scope of the privilege." *Leazure v. Apria Healthcare, Inc.*, No. 1:09-cv-224, 2010 WL 3895727, *1 (E.D. Tenn. Sept. 30, 2010) (outlining law from various jurisdictions concerning applicability of attorney-client privilege based on role played by in-house counsel).  Put another way, the privilege applies only if the lawyer provides legal advice and does not protect communications that an attorney gives primarily for the purpose of advising on business or economic matters. *Id*.  In a commercial setting, however, "legal and business considerations may frequently be inextricably intertwined . . . . The mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege." *Graff v. Haverhill N. Coke Co.*, No. 1:09-cv-670, 2012 WL 5495514, at *13 (S.D. Ohio Nov. 13, 2012) (quoting *Picard Chem. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 686 (W.D. Mich. 1996)).

"A communication is excepted from the attorney-client privilege if it is undertaken for the purpose of committing or continuing a crime or fraud." *United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997).  The importance of confidentiality in attorney-client communications is extinguished when a client desires to obtain legal advice not in relation to a possible prior wrongdoing, but for purposes of planning a future wrongdoing. *United States v. Zolin*, 491 U.S. 554, 563–64 (1989) (citing *Clark v. United States*, 289 U.S. 1, 15 (1933)).  The crime-fraud exception to the privilege arises to assure that the "seal of secrecy" between a lawyer and client

4

does not extend to communications "made for the purpose of getting advice for the commission of a fraud or crime." *Id.* The Sixth Circuit has set forth a two-part test for determining whether to apply the exception:

> "First, the government must make a *prima facie* showing that a sufficiently serious crime or fraud occurred to defeat the privilege; second, the government must establish some relationship between the communication at issue and the *prima facie* violation." *In re Antitrust Grand Jury*, 805 F.2d 155, 164 (6th Cir. 1986). To satisfy its *prima facie* showing, the evidence presented by the [movant] must be such that "a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud." *Id*. at 166.

*Collis*, 128 F.3d at 321. "The relevant criminal intent is that of the client, and the intended crime or fraud need not actually occur for the exception to apply." *United States v. Danny R. Clem*, No. 97-5507, 2000 WL 3535086395, at *3 (6th Cir. Mar. 31, 2000) (citation omitted); *Collis*, 128 F.3d at 321 (noting that for the crime/fraud exception to apply, the crime or the fraud needs to be "the object of the client's communication").

## III.

Having reviewed the relevant communications *in camera* and applying the authority set forth above, the Court concludes that the redacted portions of the e-mail chain are exempt from disclosure pursuant to the attorney-client privilege. Because the matter is redacted, AMP could not know that Attorney Daw went-off topic to discuss a matter not directly related to the original e-mail correspondence. Daw advised his clients regarding a discrete matter; he solicited his clients for information to enable him to offer advice; and he provided his legal interpretation of the issue. The primary purpose of the exchange was related to rendering legal advice.

Bechtel's disclosure of the final e-mail between Cantrell to Tobler, which did not go to Daw, does not alter the outcome. In this e-mail, Cantrell indicates that he agrees "holding on to" the full fee Bechtel sought "may be tough." The fact that Cantrell and Tobler continued the

discussion without Daw is not, as AMP suggests, evidence that no one at Bechtel considered the matter related to legal advice. It instead elucidates the realities of the corporate setting in which in-house counsel provides advice that may touch upon matters of a business concern. *Cf. Graff,* 2012 WL 5495514 at *13 (noting that in-house counsel's consideration of business matters in providing advice will not necessarily destroy privilege); *Perrigo Co.*, 951 F. Supp. at 686 (same).

Finally, the Court concludes that the crime-fraud exception does not apply to defeat the attorney-client privilege. AMP devotes significant briefing and offers a plethora of evidence in an effort to establish the requisite *prima facie* showing that Bechtel committed a sufficiently serious crime or fraud. Having had the benefit of reviewing the e-mails *in camera*, however, the Court concludes that it is unnecessary to opine on whether Bechtel has made a *prima facie* showing that Bechtel engaged in fraud. The communications at issue simply were not "made for the purpose of getting advice for the commission" of the fraud that AMP alleges Bechtel committed. *Zolin*, 491 U.S. at 564. Put another way, the subject exchange did not involve Bechtel employees seeking assistance or legal advice from Daw for purposes of planning the alleged fraud. Because the second prong of the Sixth Circuit's test is not satisfied, the crime-fraud exception cannot apply. *See Collis*, 128 F.3d at 321 (holding that some relationship must exist between the communication at issue and the crime or fraud).

**IV**.

For the foregoing reasons, the Court concludes that the communications at issue are protected by the attorney-client privilege. Defendant need not disclose the redacted portions of the subject e-mail exchange to Plaintiff.

6

**IT IS SO ORDERED.**


DATE:  December 6, 2012                    /s/  *Elizabeth A. Preston Deavers*
                                                                                   **ELIZABETH PRESTON DEAVERS**
                                                                                    **UNITED STATES MAGISTRATE JUDGE**